Good morning, Your Honors. David Baines appearing on behalf of the Appellate Miss Aifang Ye. The facts in this case are relatively undisputed. Oh, Your Honors, I'd like to reserve five minutes for rebuttal time. The facts here are basically undisputed. Miss Ye traveled to Saipan, which is United States territory. She had a child, a daughter. Her husband was present initially with her, but then had to return back to China. After giving birth to the child, the husband couldn't come back from China, and she asked her brother-in-law, her husband's father, to bring the husband's passport as he was coming to Saipan anyway because his wife had recently given birth, and he was applying for a U.S. passport for his child as well. The brother, Mr. Chang, brought the other brother's passport, and they proceeded to the immigration office where Miss Ye had correctly filled out all the information, including the father's name. However, the brother-in-law, the brother of the father, signed for his brother. He had a power of attorney that would allow him legally to sign, however, was not notarized. And he didn't disclose the power of attorney or the fact that he wasn't actually the person he was signing for to the passport agent? No, he did not. So he didn't purport to use the power of attorney at all? No, that's correct, Your Honor. Do we even have a copy of the unnotarized power of attorney in the record? No, we don't. In fact, the power of attorney was never produced. No one asked him to produce it, but he did state in an interview subsequent as part of the investigation that he did have a power of attorney, and he was never seriously questioned about that. Legally, what this case turns on is if the applicable statute is a specific intent crime or not, and it's actually an interesting area of the law which has developed much since the 1940s when the Supreme Court first ruled on the issue. I just want to go over very briefly what the language of the statute, because it's important. The language of the statute suggests that it is a specific intent crime for two specific reasons. It says the word willfully and knowingly, and then goes on to say contrary to the laws regulating the issue of passports or the rules prescribed herein. The basic statutory instruction... What's hard about that? I mean, is there any doubt that your client knew that the statements being made to the passport agent were false? Well, the statements themselves were actually accurate. He wasn't the person he purported to be. That's correct. The brother-in-law. It wasn't the husband. Well... And she knew that. She knew that he was not the father. That's correct. But the issue is for a specific intent crime is did they know that it was illegal? Well, that, I mean, as the law has made clear, willfully means different things in different contexts. Yes, absolutely. And the cases in this context, what case says that that specific knowledge is required? The Winn case, Your Honor. Well, Winn actually says that a given instruction, which duplicates the instruction given here, was sufficient. That's that end the case. Because the district court may not have erred in giving the willful instruction, but it then went on to eviscerate that instruction by giving a instruction that the Ninth Circuit model jury instructions should not be given in a specific intent. It said specifically that the government did not have to prove that the defendant knew what they were doing was illegal. Wasn't that instruction, though, knowingly? And if the jury convicted, didn't they have to find specific intent to find the willingly prong? So why can't we find that the jury must have found its specific intent here anyway? Well, this court has held that when you have a specific intent crime, this is the United States versus Liu, which is a copyright case, but specifically held that if you give both a specific intent crime instruction and then you give an instruction knowingly that says the government doesn't have to prove, that's error. And there's other Ninth Circuit precedent. It was also in the Truman case and in the Stein case. Now, again, those were not involving this particular statute, but the juxtaposition of those two jury instructions creates tension, and it's confusing to the jury, because on one hand, they're basically being told, well, the defendant has to know what's wrong, and no, the defendant doesn't have to know what's wrong. And the, so if we provide, if we say that this is a specific intent crime because of the definition of willful, then we follow the model of Ninth Circuit jury instructions, and that second sentence that says defendant, that the government doesn't have to prove the defendant knew what was wrong, should not have been included. And we did object to that being included. And why aren't we bound by Browder? Yes. Well, a number of reasons. First of all, the holding was dicta. It's kind of an interesting case. That doesn't matter, though, right? It's a Supreme Court case. We have to follow it anyway, don't we? No, not if it's dicta, Your Honor. And when there's a Ninth Circuit case directly on point that says, the opposite says that it should be a specific intent. But here we have Suarez-Rosario as a Ninth Circuit case that follows Browder, right? No. That case actually, it was whether, it cited to Browder, but it actually held that, the question before the court there was whether the government had to prove the true identity of the person. And the Ninth Circuit said, no, you don't. The person in that particular case never contested that they gave misstatements that provided a wrong name. But they said, well, the government, you have to prove what's my right name. And we said the exact same thing about Winn. No one was talking about whether this was a specific intent crime in Winn. Well, there was a review of the sufficiency of the evidence, which necessarily entails the going over the case. And the court specifically reviewed that and said, this is a correct jury instruction. But couldn't that just mean this jury instruction didn't require the jury to find too little? I mean, once you have a jury instruction that's at least enough, and there's enough evidence to meet that, then who cares if it's more than it needed to be? Well, again, I mean, we go back to that. We've got a companion instruction that says the government does not have to prove that the defendant acted, in essence, with specific intent. And so there's the rub. We've got two jury instructions, one under Willful, which can pass muster, but the other one which can't because there's tension there. And I guess I'm finding a tough time to see that willingly instruction is so difficult to be just exactly like the knowingly instruction, because the knowingly instruction said that the jury must find that your client made the statement intentionally as opposed to accidentally or inadvertently. So I'm trying to figure out what is the tension there? Well, it... I mean, the first instruction was pretty specific, voluntarily and intentionally with specific intent. And the knowingly instruction said, the jury must find that ye made the statement intentionally as opposed to accidentally or inadvertently, as opposed to carelessly or negligently or inadvertently. I'm trying to find the tension. This court and the United States Supreme Court both have held repeatedly that willfully means something different than knowing. And under both phrases, there's due meaning. Otherwise, willfully simply becomes a superfilage, which goes against the basic tenet. And the jury was instructed on willfully, and you've acceded to that instruction. What you're trying to argue is that somehow the piece of the instruction of knowingly took back a piece that's required, you argue, for willfully. Yes. Why? Because, again, in this court... Particularly in the facts of this case. Yes. There was no evidence put on by the government that this particular defendant knew that there was a violation of the law. See, that's the part that's hard for me. She's in a U.S. government office. She's from China. She's gone to a lot of trouble overstaying in Saipan in order to acquire U.S. citizenship for her daughter. This isn't a passing casual thing. She's in there. She knows the person standing next to her is not her husband, is not the father of her child. He's not who he portrays to be. And she thinks that's just fine, that might not be a violation of U.S. law. Really? Well, Your Honor, under Ratzliff, the United States Supreme Court held that the statute which requires depositors of over $10,000 to report it to the bank. There, it was undisputed that the defendant deposited... That's not something everybody assumes is a matter of course. Do you know that $10,000 has to be reported in a way that $9,999 doesn't have to be? I mean, that's one of those things Congress passes that installs a law on all of us. But the notion of going into a passport office to get a passport for your daughter after you've gone to so much trouble to acquire American citizenship, and to think that you can simply lie to the passport agent and it's just fine under American law, that's a hard concept for me to get my arms around. Well, if it's indeed lying. Now... Well, how is it not lying? He's signing something that says he's somebody he's not. But he was authorized to sign. There's no evidence... Well, we don't have any evidence of that, really. And she didn't tell... The passport agent wasn't told, I'm signing for my brother because I have the authority. She was told, I'm this other guy that I'm really not. And she says, you know, it doesn't really look like the picture matches, but what do I know? So she accepts the fact that he's the guy he portrays, but he's not the guy he portrays. How's that not a lie? Well, again, it isn't whether they're lying. I mean, she said... Look, how does she not think that's a violation of law? Because she didn't know that Chinese government's just fine with people coming into government offices and getting false IDs? Well, the ID itself wasn't false. The child was legally entitled to... I mean, it was a real ID, but it wasn't his. No, I mean... She didn't say getting childs. Using false ID. The Chinese government is just fine with people coming into Chinese government offices and getting identification documents by using false identification documents? Again, she could have thought that there was a regulation, but not specifically a statute. I mean, the statute itself, I mean, the application itself has a requirement that they declare underneath the penalty of perjury, which brings home the idea that it must be against the law, that what you're doing isn't just a violation of a regulation or a policy. It's a violation of United States law. But that oath was never translated that we know of. She said she didn't know. The brother said it wasn't. On that topic, you say that the translators were independent contractors, but is there any evidence in the record that they were independent contractors? Your Honor, with the confrontation clause, I realized that this being a three-judge panel, I'm only trying to preserve the confrontation clause argument for later appeal. Except we're stuck. We're bound by precedent. Yes, exactly. So I'm just putting it out there in case there's an en banc or the client wants to go en banc or anything like that. But under Neisman, which is still a valid scene in my law, I'm sorry, a valid Ninth Circuit law, the statement would come in. So that's why I'm just saying it's only for appellate purposes. We're not substitutively trying to argue it. So we're kind of eating into the time we wanted to save for rebuttal. Do you want to say what you have left? Yes, please, Your Honor. Thank you very much. And we'll hear from the government. Good morning to the panel, and may it please the Court, Ross Naughton for the United States. I just want to start by going over sort of in broad brush strokes what the government's position is right here. Affirm Missy's convictions. The issues are really not that complicated. The issue of the jury instructions were our contention is there was, if there was any error in the instruction, it went in favor of Missy. Let's focus on the sentence in the knowingly instruction. Yes. Should that sentence have been included within the instruction? If you were doing it all over, would you have that sentence included within the instruction? Our view, Your Honor, if we're doing it all over, the instruction on willfully would have been different, would not have been the one that the court gave. That's that's our central contention. Because your position is this is not a specific intent crime. Yes. And we required them to find too much. That's your position. Precisely. And if I may, I want to steer clear of the term specific intent, general intent. I don't think they're very helpful. I think they cloud the issue. 40 years out of law school, I still don't really know what it means. So it's okay with me. Who does? And I think even the court's instructions, instruction 5.4 says, you know what, don't instruct juries on specific and general intent. It's just And just going to set aside those terms and focus on really the question, did we have to prove that Ms. Yeh had it in her head? Oh, what I'm about to do is illegal. I know that for certain. Or did we not have to prove that? And the government's position is that we did not have to prove that because the Browder Supreme Court case controls here. I think it's really beyond dispute that Browder controls the meaning of the term willfully and knowingly in the context of what, in the brief, I called a 1542-2 offense. Now, just that's a little complicated to enunciate. So I'm just going to call that a use offense, because, again, the statute that we're talking about here, Section 1542 of Title 18, creates two offenses. There's a false statement offense and a use offense. If you make a false statement in an application for a passport, that's a crime. If you use a passport that you've procured by a false statement, that's a crime. Those are the two offenses created in 1542. It's a short, simple statute. In Browder, the Supreme Court defined the meaning of the term willfully and knowingly in the context of a use offense. Now, we vehemently reject the notion that Browder is dicta. I don't see how any reading could sustain that, because if you look at the first two pages of Browder, Browder says, basically, we have two issues that we're considering here. One is whether the facts of this case constitute a use within the meaning of Section 1542. And second, whether the petitioner was properly convicted of a willful use. So there were two issues, and there is no way that the court could have decided those issues in a manner that, I mean, those are the issues. And so the decision is not the language governing or construing the term willfully and knowingly cannot be dicta. It was necessary to dispose of what it said was the second of the two issues in the case. And when our court approved an instruction that, by your reading, was too high a bar? Yes, Your Honor. Well, aren't we bound by when? I do not think so, Your Honor. In when, first of all, government disagrees that when is not dicta. Our position is that it is dicta. The counsel for Ms. Yee is saying, no, no, it can't be dicta, because it necessarily, upon passing on the sufficiency of the evidence, the court had to contend with the propriety of the jury instruction. Not so. It's entirely possible that the jury instruction was simply not in dispute in that case, in which case maybe that was a government mistake. You're right. When the issue was sufficiency of the evidence, but in establishing what had to be proven, our court used the word correctly to describe the instruction. It could have said, whether it's right or not, this is what has to be proven, and there was sufficient evidence to prove that. But what the panel actually said was that the district court correctly instructed the jury that, and then there's a quotation, which the district court, in this case, seized upon as saying, well, that's good enough for the Ninth Circuit then. It's going to be good enough for the Ninth Circuit this time. I'm going to use that. That's true, Your Honor. But if it comes down to that, if it's just semantics and sort of a fortuitous word choice, government's position is that pushes back in the direction of dicta. If it was not necessary for the panel to say whether or not that instruction was correct, because it could well have just said, the instruction was such and such, the evidence was sufficient to sustain the conviction under that instruction. But if we have language in Suarez-Rosario that conflicts with language in Winn, whether we call it dicta or not, if we've got conflicting Ninth Circuit language, do we have to take it on bonk to resolve this? Are we able to resolve this as a panel? I think you can, because the contention here is that neither case has really addressed the issue square on. Suarez-Rosario, we admit that that appears to favor us, but also I can't say that's not dicta. I think it fairly is read as dicta. But I think it's dicta in the more accurate and truer direction insofar as it reckons with Browder. So if we say that Winn is not dicta, do you lose? No, Your Honor. If you say that Winn is not dicta, and that is what need be proven, then the instruction on Willfully that was given was correct. And then, arguably, there is a problem with the knowingly instruction. And then our argument is harmless error. Did you make that argument in your brief, that the Willfully instruction takes care of it because the jury had to have found specific intent anyway? I know you don't want to use the term specific intent, but did you make that harmlessness argument that you're starting to make now? Yes, yes. We essentially argued that it's basically beyond reasonable doubt that had the correct, assuming that the Willfully instruction was correct, or even assuming that a stricter Willfully instruction ought to have been given, which I believe is the argument that counsel is making. On those assumptions, the inclusion of the possibly extraneous language in knowingly was harmless beyond reasonable doubt because a jury could not have found that Ms. Yee did not think that her actions were unlawful. And here were... Okay, there are two things you might be arguing in your brief. I understood your brief to be arguing that the facts here, the evidence here, are so compelling that she knew that it was unlawful, that the jury must have found that. That's one thing that has to do with what the evidence is. Another thing would be, look at these two instructions. If they found, if they convicted, they must have found specific intent because of the way Willfully and Knowingly were worded. I did not see you making that second version of this argument in your brief, I don't think, that it was harmless because the way these instructions lined up, they must have found specific intent anyway. That's a different thing than saying the evidence was really compelling. Okay, okay. And I don't think you made the second one. I did not make that argument, Your Honor. I think I see the difference, I take it. I think it's a subtle difference, but I agree that it's there. If I had to develop that, I guess I would say the Willfully instruction that was given was, you, jurors, need to find that Ms. Yee had a purpose to disobey or to disregard the law. The Knowingly instruction was, it is not necessary that she knew that her actions were unlawful. An argument could be made, and I acknowledge that I'm making it for the first time here just in response to your question. An argument could be made that those two sentences are, can in fact be harmonized because it is possible that a person could have the purpose to disobey or disregard the law without actually knowing for certain that their actions are unlawful. So in other words, it could be a kind of sort of aggravated recklessness with respect to the lawfulness of their actions without rising to the level of knowledge. That's even a different version, I think. That's a different version than I had. Okay, then perhaps I misunderstood. I apologize. What I was saying is, if they find, they had to find Willfully and Knowingly, right? They had to find every element. So Willfully was one, Knowingly was the other. Willfully required them to find that, whatever the language was, that they did this intentionally with the specific intent to do something the law forbids. If they found that, they must have believed that she, I mean, this would be the argument anyway. I don't know if it's a good one, but the harmlessness argument would be, once the jury found that, they must have believed that she did this voluntarily and intentionally with the specific intent to do something the law forbids. Now, okay, that comes along and they get an instruction on Knowingly that says they don't have to find it for Knowingly, but in order to convict on Willfully, they must have found it. That would be the harmlessness argument. It's different than the one you just gave. Okay, yes. But I didn't see that in your brief. So if we thought that was the best way to resolve this case, I'm a little unsure where we stand at this point because you didn't argue it, and I don't know if that's a waiver of that theory. It could well be, Your Honor. We did not make that argument. I think it is close enough in spirit to the evidentiary argument that we did make in the brief. I do want to emphasize not wanting to snatch defeat from the jaws of victory or anything, but the harmless error argument is our alternative argument here and is, of course, secondary because our chief contention is that the 1542 false statement offense is in need of clarification, is in need of an authoritative pronouncement from this court that explains exactly what mens rea is needed in order for the offense to be proven. That would help prosecutors. That would help defense counsel in this. Prouder is not enough. No, our position, Your Honor, is that Browder is enough. But the district court didn't agree with you. That's true. The district court did not agree, but we disagree with the district court. Browder, again, construed 1542, which is a short, simple statute. It contains the same mens rea term, which is willfully and knowingly, in both offenses. One of our chief contentions is it makes no sense to suppose that willfully and knowingly can mean two different things in different parts of a short statute, especially if you look at the reasoning of Browder. Browder says we're thinking about the spirit and intent of the act. That's a quote. Your brief did a nice job in breaking down the different potential meanings of willfully in different contexts. And it's kind of a given that willfully means different things in different contexts. Yes, Your Honor. From a bigger perspective, separate and apart from what you think the case is bind us to, why should this be a case where knowledge of the unlawfulness of the particular act shouldn't be part of the package? Do you mean just as a matter of policy, Your Honor, sort of apart from Browder and everything? We're trying to figure out why should the definition that you've described as what, the lower level, the middle level, why should the lower level definition be the one that applies to this statute? The statute uses the terms willfully and knowingly. It means to require some kind of knowledge, some level of intent or mens rea on the part of a defendant separate from ordinary criminal statutes. So why should this one be what you've defined as the lower level? It has to do, Your Honor, with the basic purpose of mens rea terms in a statute, which is essentially to make sure that only culpable people are punished. You don't want to over deter and you don't want to under deter. You want the mens rea terms to be pitched at just the right level so that, and it depends on what sort of behavior people are engaging in. Earlier, Your Honor, you cited, you discussed the structuring statute. That was that issue in Rotslaf. That is a prime example of a, the type of conduct that ought to be in creating, if you're creating a crime that's targeting that conduct, you want to design it in such a way so that you are not deterring people who are engaging in socially beneficial conduct and just don't really know what they're doing. You want to make sure that it's pitched at people who know exactly what they're doing is wrong. Because the danger is, once you're creating crimes that govern complex realms of behavior, people who are engaging in these complex realms, trying to plan their activities, are going to make mistakes. It's just, it's just human nature. Society is increasingly complicated, so on and so forth. So that's why, when you're dealing with realms like Title 31 banking offenses or tax, it's complicated, people make mistakes all the time. For that reason, you don't want to punish people, you don't want to create a crime that punishes someone who just kind of blunders into it and is doing their best to act lawfully. At the other end of the spectrum, our position is, is a case like this, where it is simply beyond belief that Missy could have been doing her best to act lawfully in circumstances where she... And you think that, well, it doesn't really, if we're interpreting the statute generally, it has to apply to everyone, so you think... Yes, yes, sure, sure. No one could ever lie to a passport office without realizing it was illegal in any context? Point well taken, Your Honor, and agreed. It is something that an innocent person would... can... just simply cannot do by accident. It's a short form, it's very simple, the process isn't that complicated. Reasonable person ought to know, cannot include falsehoods in this process. Thank you. I believe I've run out of time. Thank you, Your Honor. You have. Thank you. We'll hear rebuttal. I do agree with Mr. Gahan that it would be helpful if this court were to clarify. What I disagree is that in Browder, the court specifically looked at and defined the use of whether it was intentional or not. What the Supreme Court held was that the crime that he was charged with, 1542-2, the use of the passport, was complete once he provided false information and obtained the passport, and then if he used it in any way. His argument was, well, look, I was coming to the United States, and I can use this passport to come to the United States. Therefore, yes, it's a document that contained a false statement, but that's okay because my use was not fraudulent. And the court said, no, no, no, no. It doesn't matter about your use as fraudulent or intentional or willful. You use it for any reason, whether you use it to prove that you're a United States citizen, which he was, or for any reason. It was complete when you made the fraudulent statement in the passport. And don't you think that at least as to that section, that's a holding that it's not a specific intent crime? Well, if we were to follow Browder, yes. I mean, it... And why shouldn't we follow Browder? I think it's a holding of Browder, at least as to that section. Now, then maybe we have a question of whether what it says on that section applies to our section, but I don't see how it's dicta at least as to the use. Sorry, Your Honor. Actually, I disagree with all due respect. I don't think it binds as to 1542-2 because the court held that once you say that you've made a fraudulent statement and you use it, it's not addressing the actual issue of what was the willful element. It just says, look, it's already completed. You gave the false statement. And there was never any contention that the statement itself was not false. He was just arguing, well, yeah, I used it, but I didn't know I was going to have to use it. And so with that, the willful argument applies because I agree with the government that there is some tension to say that, well, it applies to 1542, willful, but doesn't apply to 1541. There is tension there. And I think it would be more consistent to say that willful under both sections of 1542 require a specific intent. And another reason why Browder, there's reason to doubt that decision, is that there's been a whole host of case law since then. It was a 1941 decision. And as all authorities agree, the Supreme Court has been evolving the definition of willful. As has the- A bunch of circuits have looked at this question, though, and found that Browder binds as to both sections, right? Has any circuit gone the other way? I disagree that a bunch of, I know that the government made this argument that a bunch of circuits have held that, but in fact, that's not accurate. The decisions were not correct, Your Honor. I can go into, for example, the United States versus Salvinas First Circuit, 2004, is a venue issue. The only one that squarely addressed this issue, and is contrary to my argument, is United States v. George. But the difference in with the Second Circuit is that there was no prior circuit opinion holding that willful means this. It means something more than knowingly. So it was free to say, okay, we can look and follow Browder. But the other cases, U.S. versus Washington, which is at the D.C. Circuit in 1983, the defendant there wanted proof, they wanted to put on proof of good motive. In other words, it wasn't just saying that the government has to show that they acted willfully. Said, well, look, the reason I did this willful act was to show that I'm a good person, that I had a good motive in doing it. And obviously, that's far cry from actually defining how willful. I see that I've gone out of time, and I apologize. But if there's any other questions. We help take you there, and we appreciate the very helpful arguments by both counsel. That case just argued is submitted. Thank you very much, Your Honors. Thank you.
judges: Clifton, Smith, Friedland